1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    DEBORAH MARTINEZ,                          Case No.  1:21-cv-00160-AWI-HBK

12                    Plaintiff,                  FINDINGS AND RECOMMENDATIONS TO
                                                  DENY PLAINTIFFS MOTON FOR
13         v.                                     SUMMARY JUDGEMNT, GRANT
                                                  COMMISSIONER OF SOCIAL SECURITY'S
14    KILOKO KIJAKAZI,                            CROSS MOTION FOR SUMMARY
                                                  JUDGMENT AND AFFIRM
15                    Defendant.                  COMMISSIONER'S DECISION[1]

16                                                FOURTEEN-DAY OBJECTION PERIOD

17                                                (Doc. Nos.  25, 26)

18

19         Deborah Martinez ("Plaintiff" or "claimant") seeks judicial review of a final decision of

20    the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application

21    for disability insurance benefits under the Social Security Act.  (Doc. No. 1).  The matter is

22    currently before the Court on the parties' briefs, which were submitted without oral argument.

23    (Doc. Nos. 25, 26, 28).  For the reasons set forth below, the undersigned RECOMMENDS

24    denying Plaintiff's motion for summary judgment, granting the Commissioner's cross motion for

25    summary judgment, and affirming the Commissioner's decision.

26

27    [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule
      302(c)(15) (E.D. Cal. 2022).

28

1

### I.    JURISDICTION

2       Plaintiff protectively filed for disability insurance benefits and supplemental security

3   income on May 29, 2014, alleging an onset date of January 1, 2014 (at initial hearing amended to

4   April 22, 2014).  (AR 197-202) (*see also* Doc. No. 12-3 at 16).  Benefits were denied initially and

5   upon reconsideration.  (AR 197-202, 203-204,133-38, 141-147).  Plaintiff first appeared before

6   Administrative Law Judge Vincent A. Misenti on January 20, 2017.  (Doc. No. 12-3 at 34).

7   Plaintiff was represented by counsel and testified at the hearing.  (*Id*. at 34-69).  On April 10,

8   2017, the ALJ issued an unfavorable decision (AR 12-32), and on April 16, 2018, the Appeals

9   Council denied review (AR 1-6).  On July 10, 2019, the United States District Court for the

10  Eastern District of California remanded the case for further proceedings.  (AR 1018-1045).  On

11  remand, Plaintiff appeared before Administrative Law Judge Scot Septer ("ALJ") on September

12  3, 2020.  (AR  929).  On September 28, 2020, the ALJ issued an unfavorable decision.  (AR 903-

13  921).  The Appeals Council denied review on December 21, 2020.  (AR 897).  Plaintiff filed the

14  instant action now before this Court pursuant to 42 U.S.C. § 405(g).

15

### II.    BACKGROUND

16      The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's

17  2020 decision on remand, and the briefs of Plaintiff and the Commissioner.  Only the most

18  pertinent facts are summarized here.

19      Plaintiff was 52 years old at the time of the hearing.  (*See* AR 931).  She completed the

20  eighth grade.  (AR 937).  She lives with her daughter, her daughter's husband, and two grandsons.

21  (*Id*.).  Plaintiff has work history as a bill review analyst.  (AR 938).  Plaintiff stopped working

22  because she was laid off due to down-sizing.  (AR 941).  She reported that she is unable to work

23  now because of issues with her back, shoulders, and arms.  (AR 942).  Plaintiff testified she can

24  barely walk, not even half a block," cannot shower by herself, lift her arms overhead, and relies

25  on her daughter for aid.  (AR 942-44).  She testified she uses a cane to walk.  (AR 944-45).

26  Plaintiff experiences constant back pain but takes medication that "eases it but it does not take it

27  away."  (AR 952).

28      ////

2

1   **III.   STANDARD OF REVIEW**

2          A district court's review of a final decision of the Commissioner of Social Security is

3   governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

4   Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

5   is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012); *see also Smith v.*

6   *Kijakazi*, 14 F. 4th 1108, 1111 (9th Cir. 2021).  "Substantial evidence" means "such relevant

7   evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v.*

8   *Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) (quotation omitted).  Stated differently,

9   substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."

10  *Hill*, 698 F.3d 1159 (quotation and citation omitted).  In determining whether the standard has

11  been satisfied, a reviewing court must consider the entire record as a whole rather than searching

12  for supporting evidence in isolation.  *Id.*

13         In reviewing a denial of benefits, a district court may not substitute its judgment for that of

14  the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible

15  to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

16  2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is

17  harmless.  *Id.*  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

18  nondisability determination." *Id.* (quotation and citation omitted).  The party appealing the ALJ's

19  decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556

20  U.S. 396, 409-10 (2009).

21  **IV.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

22         A claimant must satisfy two conditions to be considered "disabled" within the meaning of

23  the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful

24  activity by reason of any medically determinable physical or mental impairment which can be

25  expected to result in death or which has lasted or can be expected to last for a continuous period

26  of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the

27  claimant's impairment must be "of such severity that he is not only unable to do his previous

28  work[,] but cannot, considering his age, education, and work experience, engage in any other kind

3

1   of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A),

2   1382c(a)(3)(B).

3       The Commissioner has established a five-step sequential analysis to determine whether a

4   claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

5   At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§

6   404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity,"

7   the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b),

8   416.920(b).

9       If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

10  two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20

11  C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or

12  combination of impairments which significantly limits [his or her] physical or mental ability to do

13  basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).

14  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner

15  must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

16      At step three, the Commissioner compares the claimant's impairment to severe

17  impairments recognized by the Commissioner to be so severe as to preclude a person from

18  engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If

19  the impairment is as severe or more severe than one of the enumerated impairments, the

20  Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d),

21  416.920(d).

22      If the severity of the claimant's impairment does not meet or exceed the severity of the

23  enumerated impairments, the Commissioner must pause to assess the claimant's "residual

24  functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's

25  ability to perform physical and mental work activities on a sustained basis despite his or her

26  limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth

27  steps of the analysis.

28      At step four, the Commissioner considers whether, in view of the claimant's RFC, the

claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.     ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity since January 1, 2014,[2] the alleged onset date.  (AR 909).  At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, left shoulder and hip arthritis, migraine headaches, coronary artery disease, and carpal tunnel syndrome.  (AR 909).  At step three, the ALJ found that Plaintiff did not have an impairment or combination of

---

[2] At the hearing held on September 3, 2020, the claimant's attorney asserted an onset date of "1/1 of '14." (AR 936).  The ALJ in its decision adopts this date as the date of onset.  (AR 906-907).  The Commissioner identifies April 22, 2014 as the date of onset.  (Doc. No. 26 at 2).  The Court finds this ambiguity not relevant for resolving this case.

impairments that met or medically equaled the severity of a listed impairment.  (AR 913).  The

ALJ then found that through the date last insured Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.15676(b) and 416.967(b) except the claimant is occasionally able to climb ramps and stairs, and is never able to climb ladders, ropes and/or scaffolds. The claimant is frequently able to balance, is occasionally able to kneel or stoop, is never able to crawl or crouch, and is **frequently[3] able to reach and handle with her left upper extremity**.  The claimant should not work in environments subjecting her to concrete exposure to respiratory irritants such as gases, dust, smoke and/or fumes, or which would subject her to concentrated exposure to extreme cold or warm temperatures, or humidity and/or wetness. The claimant would require the use of a cane for ambulation and balancing.

(AR 914) (emphasis added).  At step four, the ALJ found Plaintiff is capable of past work as a

medical voucher clerk.  (AR 920).  On that basis, the ALJ concluded that Plaintiff was not under a

disability, as defined in the Social Security Act from January 1, 2014, through the date of the

decision.  (AR 921).

## VI.    ISSUES

Plaintiff's appeal presents one issue: whether the ALJ's rejection of the limitations opined

by examining physician, Dr. Tomas Rios, were supported by substantial evidence.  (*See* Doc. No.

25 at 2; Doc. No. 28 at 2).  Plaintiff argues that the ALJ improperly referenced treatment records

that had nothing to do with treatment for the wrist pain and provides no explanation for why the

ALJ gave greater weight to the opinion of the agency consultative doctor over Dr. Rios, who

Plaintiff identifies as the treating physician.  (Doc. No. 28 at 2).  Plaintiff focuses on use of the

left wrist.  (*See generally* Doc. No. 25 at 14-16).

## VII. DISCUSSION

Plaintiff contends the ALJ did not provide substantial reasons for assigning "some

weight" to Dr. Rios' findings that Plaintiff was limited to light work with "left **occasionally**

reaching, handling and fingering and feeling" and assigning "significant weight" to the finding of

an agency physicians, Drs. De La Rosa and Pham, who concluded Plaintiff was limited to light

---

[3] Frequently is defined as occurring from one-third to two-thirds of the time.  Social Security Ruling (SSR) 83-10.

duty capable of "**frequently** handle and reach" handling. (Doc. No. 25 at 13; Doc. No. 28 at 3-4)

(emphasis added).  In response, Defendant argues the ALJ's decision was proper and supported

by substantial evidence.  (Doc. No. 26 at 8).  Defendant notes the ALJ concluded that the:

> …state agency medical consultant's opinion for light work with
> *frequent* reaching and handling with the left arm merited significant
> weight because it was supported by and consistent with the overall
> record.   (AR 920).  The ALJ gave some weight to consultative
> examiner Dr. Van Kirk's opinion for light work with limitations, but
> did not agree with his opinion that Plaintiff could *constantly* reach,
> handle, and finger with the left arm (AR 920).  Similarly, the ALJ
> gave some weight to Dr. Rios' opinion for light work with
> limitations, but did not agree with a limitation for only *occasional*
> reaching and handling with he left arm (AR 919).

(Doc. No. 26 at 8).  Defendant argues because the ALJ is responsible for resolving conflicts in the

medical evidence, the Court should affirm the finding.  (*Id.*).  In Reply, Plaintiff acknowledges

she cited the wrong standard of review for medical opinions based on the date Plaintiff filed for

disability, but nonetheless argues the ALJ neither provided substantial evidence at the very least,

and/or specific and legitimate reasons at the very most.  (Doc. No. 28 at 2).  Plaintiff contends the

Commissioner's response in opposition combs the medical records and provides post hoc review

to support the decision, which the ALJ did not provide.  (*Id.* at 5).

        This Court reviews the Commissioner's decision to determine whether it is based on

proper legal standards under 42 U.S.C. § 405(g) and whether substantial evidence in the record

supports it.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Because Plaintiff applied for

disability prior to March 27, 2017, substantial evidence is the requisite standard of review.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison

Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted).  It is more than a mere

scintilla, but less than a preponderance.  *Connett v. Barnhart*, 340 F.3d 625, 630 (9th Cir. 2007)

(quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  "The court will uphold the ALJ's

conclusion when the evidence is susceptible to more than one rational interpretation."

*Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  But the court must "consider the

record as a whole, weighing both evidence that supports and evidence that detracts from the

1  Secretary's conclusion." *Tackett*, 180 F.3d a 1098 (citations omitted).  The court "may only

2  consider the reasons provided by the ALJ in the disability determination and 'may not affirm the

3  ALJ on a ground upon which he did not rely.'" *Luther v. Berryhill*, 891 F. 3d 872, 875 (9th Cir.

4  2018) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014)).  "[T]he court will not

5  reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the

6  ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti*, 533

7  F.2d at 1038.

8  **Medical Opinion Testimony**

9      As stated *supra*, the ALJ, not this Court, is in the position to act as the finder of fact and

10  weigh the evidence.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (the ALJ is

11  responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony).

12  There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2)

13  those who examine but do not treat the claimant (examining physicians); and (3) those who

14  neither examine nor treat the claimant [but who review the claimant's file) (nonexamining [or

15  reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001)

16  (citations omitted).  Generally, a treating physician's opinion carries more weight than an

17  examining physician's, and an examining physician's opinion carries more weight than a

18  reviewing physician's.  *Id.*  If a treating or examining physician's opinion is uncontradicted, the

19  ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial

20  evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  Conversely, "[i]f a treating

21  or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only

22  reject it by providing specific and legitimate reasons that are supported by substantial evidence."

23  *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).  "However, the ALJ need not

24  accept the opinion of any physician, including a treating physician, if that opinion is brief,

25  conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec.*

26  *Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).  Thus, the salient

27  question before the Court as framed by Plaintiff is whether the ALJ properly accorded weight to

28  the reviewing and examining opinions, supported by substantial evidence in the record.

1    Here, Plaintiff's reference to Dr. Rios as a "treating physician" is a misnomer.  Dr. Tomas

2    Rios examined Plaintiff at the request of the state agency on September 15, 2014.  (AR 919).

3    Approximately four years later, Dale H. Van Kirk examined Plaintiff at the request of the state

4    agency.  (AR 919).  The Court finds the ALJ set forth specific and legitimate reasons for crediting

5    one medical opinion over another.  The ALJ issued a lengthy opinion summarizing the medical

6    record and various findings.  (*See* AR 906-920).  The ALJ afforded "some weight" to both Dr.

7    Rios' and Dr. Van Kirk's respective opinions based on their examination of the claimant and their

8    findings being consistent with objective findings, but determined more weight should be given to

9    Dr. Pharm and Dr. De La Rosa, the non-examining State Agency physicians, who reviewed "'a

10   significant portion' of the evidence of record." (AR 919-920).

11   Regarding Plaintiff's left arm or wrist, Dr. Rios noted Plaintiff's ability to "occasionally

12   reach, handle, finger, and feel." (AR 919).  The ALJ summarized Rios' findings as follows:

> On September 15, 2014, Tomas Rios, M.D., examined the claimant
> at the request of the state agency, and concluded that the claimant
> can stand and walk up to six hours, sit up to six hours, and lift or
> carry up to 20 pounds occasionally and 10 pounds frequently.  She
> can occasionally climb and frequently balance, stoop, kneel, crouch
> or crawl.  On the left, she can occasionally reach, handle, finger, and
> feel.  She should be precluded from working around chemicals, dust,
> fumes, and gases (Exhibit 4F).  This opinion is afforded some weight
> as it is based upon examination of the claimant and is consistent with
> the objective findings noted.

(AR 919).  Regarding Dr. Van Kirk, the ALJ noted he had determined "claimant's left shoulder

had slight pain over the bicipital groove anteriorly but was able to go through the full range of

motion," but her "elbows and wrists were without pain or difficulty," and her "fingers and thumbs

[were] normal without pain or difficulty." (AR 919). The ALJ summarized Van Kirk's findings as

follows:

> Dale H. Van Kirk, M.D., examined the claimant at the request of the
> state agency on November 10, 2019 (Exhibit 18F).  The claimant
> drove herself to the clinic.  She noted she takes a short walk[] outside
> every day, and watches television 8 hours a day.  No limp was
> detected while walking.  Romberg test was normal. Tandem walking
> was satisfactory.  She was able to get up on her toes and heels and
> squat down and take a few steps.  She had normal heel toe gait
> pattern.  She had a cane with her but did not need it during
> examination.  The claimant's cervical spine had full range of motion

9

without pain or difficulty. There was generalized discomfort in the mid lumbar spine area the greater trochanteric of the hips bilaterally but was able to go through full range of motion of the hips. Examination of the knees was normal bilaterally without pain or difficulty. The claimant's left shoulder had slight pain over the bicipital groove anteriorly but was able to go through full range of motion. Examination of elbows and wrists were without pain or difficulty. Examination of the fingers and thumbs was normal without pain or difficulty. Straight leg raise test was 90/90 bilaterally in the seated and supine position. Motor strength, muscle bulk and tone was noted to be 5/5 in the bilateral upper and lower extremities including grip strength. Sensation was intact. Diagnosis was chronic lumbosacral musculoligamentous strain/sprain likely associated with degenerative disc disease. Dr. Van Kirk concluded the claimant did not medically need a cane, except for times when she felt unsteady. She could lift 20 pounds occasionally and frequently 10. She can perform occasional postural activities and should not be required to work in cold weather or damp environments (Exhibit 18F).

(AR 920). The ALJ explained he was giving the opinion "some weight" based on examination and findings that "support the determination that claimant could perform a range of light work." (AR 920).

The ALJ gave "great weight" to the non-examining agency physicians and summarized their findings as follows:

Dr. Pharm, the non-examining State agency physician who reviewed the documentary evidence on September 30, 2014, concluded that the claimant could perform light work, indicating the claimant could frequently climb ramps or stairs, balance, stoop, kneel, crouch and crawl. She could occasionally climb ladders, ropes or scaffolds and occasionally reach overhead with the left upper extremity (Exhibit 2A). Dr. De La Rosa, the non-examining State agency physician who reviewed the documentary evidence on February 2, 2015, concluded that the claimant could perform light work. She could frequently climb ramps or stairs, balance, stoop, kneel, crouch or crawl. She could frequently handle and reach. She can occasionally climb ladders, ropes or scaffolds. She should avoid concentrated exposure to fumes, odors, gases, and poor ventilation. She should avoid work around chemicals, dust, fumes and gases (Exhibit 6A). The undersigned affords the opinion significant weight. This opinion is consistent with and supported by treatment notes discussed in detail above.

(AR 920). The "treatment notes discussed in detail above" referred to by the ALJ included a thorough review of medical record. (*See generally* AR 909-919). The ALJ noted that the claimant was no longer receiving treatment for her trigger finger or pain because the injections to the wrist and hands ended years ago because, according to claimant, they were ineffective. (AR

910).  The ALJ specifically noted "benign findings" with respect to Plaintiff's hand and wrist complaints. (AR 911) (citing 24F, page 181).  The ALJ further noted that this medical evidence was consistent with Dr. Van Kirk's objective examination that did not support more restrictive upper extremity limitations.  The ALJ pointed to specific evidence in the record:

> Dr. Kirk in 2019 noted that Tinel's test was negative for irritability of the median nerve at carpal tunnel, bilaterally, and at the ulnar never at Guyon's canal.  Tinel's test for irritability at the cubital tunnel was negative at the elbows bilaterally, and Phalen's test was negative after 60 seconds for carpal tunnel syndrome.  No pain was noted in the hands her wrists during examination and no difficulty was noted during range of motion testing (Exhibit 18F).  LAGS Medical Center records indicate the pain levels have largely been controlled, and issues such as atrophy or heightened immobility that would warrant a more restrictive residual functional capacity than determined are not supported (Exhibit 24F).  As the court remand decision notes a need to evaluate the impact of claimant's pain on function, the finding that pain levels have been controlled warrant against further limitations based exclusively on pain.

(AR 911).  The medical record the ALJ referenced demonstrated Plaintiff presented to the medical appointment with chief complaints of "back and wrist pain," but upon examination had "no tenderness to palpation over wrist joint, or TFCC," and had negative Median Flexion compression test, negative Tinnel's sign over median nerve at wrist, negative Phalen's test, negative Finkelstein test, no tenderness, and no weakness in the hand grip, among other things. (*See* 24F at 179-181).  Further, specifically with regard to Plaintiff's left wrist, the ALJ notes Plaintiff had "normal range of motion and normal strength" on September 3, 2016 and "electrodiagnostic testing of the claimant [in] March 2018 revealed a normal bilateral upper EMG examination with no evidence of any other nerve entrapment neuropathies or cervical radiculopathy. . . ."  (AR 917; citing to 24F at 253).  This was a specific and legitimate reason, supported by substantial evidence, for the ALJ to reject the limitations opined by Drs. Rios.

Plaintiff posits that the ALJ improperly referenced medical records that did not concern Plaintiff's wrist and directs the Court to certain pages of the records to support the limited mobility of Plaintiff's left hand or wrist pain.  (Doc. No. 25 at 14-15)(citing in support of left wrist issues 3F/27, 5F/3, 9F/2, 24F/253).  A review of the ALJ's opinion shows the ALJ *did* review these records and cite to them.  (AR 917) (citing 1F, 3F, 9F, 16F, 24F).

11

1    The Court does not make independent factual determinations, re-weigh the evidence or

2    substitute its decision for that of the ALJ. *Tackett*, 180 F.3d at 1098.  To the contrary, a

3    reviewing court must defer to an ALJ's assessment if it is supported by substantial evidence.  42

4    U.S.C. § 405(g).  The Court finds the ALJ articulated specific and legitimate reasons supported

5    by substantial evidence for assigning only "some weight" to Dr. Rio's opinion.  Based on a

6    review of the record, the ALJ did not commit error, harmless or otherwise, by evaluating the

7    record in totality before concluding that Plaintiff is not disabled as defined by the Social Security

8    Act.  The Commissioner's decision is due to be affirmed.

9    Accordingly, it is **RECOMMENDED**:

10    Plaintiff's Moton for Summary Judgment be DENIED and  the Commissioner of Social

11    Security's Cross Motion for Summary Judgment be GRANTED and the Commissioner's

12    decision be AFFIRMED for the reasons set forth above.

13    **<u>NOTICE TO PARTIES</u>**

14    These findings and recommendations will be submitted to the United States district judge

15    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14)

16    days after being served with these findings and recommendations, a party may file written

17    objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

18    Findings and Recommendations."  Parties are advised that failure to file objections within the

19    specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834,

20    838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

21

22    Dated:    November 29, 2022

23    HELENA M. BARCH-KUCHTA
     UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28